1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DANIEL E. GONZALEZ,                    No.  2:15-cv-2448 GEB GGH PS

12              Plaintiff,

13       v.                                  ORDER

14    DEPARTMENT (BUREAU) OF REAL
      ESTATE, et al.,
15
                Defendants.
16

17

18        Plaintiff, proceeding in this action pro se, has requested leave to proceed in forma

19   pauperis pursuant to 28 U.S.C. § 1915.  This proceeding was referred to this court by Local Rule

20   302(21), pursuant to 28 U.S.C. § 636(b)(1).

21        Plaintiff has submitted an affidavit making the showing required by 28 U.S.C. §

22   1915(a)(1).  Accordingly, the request to proceed in forma pauperis will be granted.

23        The determination that plaintiff may proceed in forma pauperis does not complete the

24   required inquiry.  Pursuant to 28 U.S.C. § 1915(e)(2), the court is directed to dismiss the case at

25   any time if it determines the allegation of poverty is untrue, or if the action is frivolous or

26   malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against

27   an immune defendant.

28        A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

                                               1

1   Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

2   Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

3   indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

4   490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

5   pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

6   Cir. 1989); Franklin, 745 F.2d at 1227.

7          A complaint must contain more than a "formulaic recitation of the elements of a cause of

8   action;" it must contain factual allegations sufficient to "raise a right to relief above the

9   speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

10  "The pleading must contain something more...than...a statement of facts that merely creates a

11  suspicion [of] a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal

12  Practice and Procedure 1216, pp. 235-235 (3d ed. 2004).  "[A] complaint must contain sufficient

13  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft

14  v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127

15  S.Ct. 1955).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

16  the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

17  Id.

18         Pro se pleadings are liberally construed.  See Haines v. Kerner, 404 U.S. 519, 520-21, 92

19  S. Ct. 594, 595-96 (1972); Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988).

20  Unless it is clear that no amendment can cure the defects of a complaint, a pro se plaintiff

21  proceeding in forma pauperis is entitled to notice and an opportunity to amend before dismissal.

22  See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987); Franklin, 745 F.2d at 1230.

23         This case arises out of plaintiff's disappointment with a decision against him in state

24  court.  Plaintiff was a real estate broker licensed in California who claims defendants conspired to

25  unconstitutionally revoke his license on December 16, 2010.  Plaintiff refers to two state court

26  judgments which precipitated the events in this case.  The undersigned has reviewed the opinions

27  from those cases which reveal the following.  Plaintiff represented a buyer in the purchase of a

28  house which fell through.  The buyer sued plaintiff to recover $7,550 she had paid to plaintiff.

1    The parties disputed whether this was a refundable deposit.  Although plaintiff prevailed at trial,

2    the court having found this sum to be a nonrefundable payment, the former Department of Real

3    Estate ("DRE") initiated administrative disciplinary proceedings against plaintiff for his actions in

4    disposing of the $7,550 without the buyer's knowledge or consent.  In an accusation, the DRE

5    found that plaintiff's actions in distributing the money to himself and to the seller's attorney

6    constituted fraud and/or negligence and recommended suspending or revoking his license.  The

7    accusation was mailed to plaintiff and when he did not respond within the time permitted, default

8    was entered, as well as a final decision revoking his license, based on both the default and the

9    determination that "the accusation had been proven by clear and convincing documentary

10   evidence."  Plaintiff filed an appeal, claiming that due to a car accident resulting in physical

11   limitations, he had been unable to pick up his mail containing the accusation and decision, but

12   that DRE commissioner Jones had orally agreed to give notice to plaintiff's attorneys in that case.

13   Such notice was not given, according to plaintiff, and he received no actual notice of the default

14   or default decision.  The trial court denied plaintiff's petition for writ of administrative mandamus

15   as untimely.  The appellate court affirmed.  Gonzalez v. Bell, 2014 WL 787356 (Cal. Ct. App.

16   Feb. 27, 2014) (affirmed also on the ground that the civil suit outcome did not control the

17   administrative license process).[1]

18        In this case, plaintiff has sued numerous defendants, claiming that the state trial court

19   decision which vindicated him should have been "obeyed" as "a final adjudication of all primary

20   rights" and enforced in the administrative proceedings which would have resulted in a decision in

21   his favor on the license revocation case.  ECF No. 1 at 6.  Plaintiff claims that defendants Wyatt,

22   Hardy-Erich, Chase, HBSC, Stepanyan, Hickman, Resmae, Cal-Western,[2] DRE, Jones, Van

23   Driel, Sughrue, Sommers, Davi, Moran, and Bell conspired with each other to disregard the trial

24   ////

25

26   [1]  This court takes judicial notice of the state court opinion.  A court may take judicial notice of
     court records.  See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United

27   States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).
     [2]  Plaintiff has named defendant Cal-Western Reconveyance Corporation in the body of the

28   complaint, but has not named this defendant in the caption of the complaint.  See ECF No. 1at 5.

1    court judgment and filed a "false accusation while plaintiff was disabled and inactive," to cause

2    his real estate license to be revoked.  Id.

3         While the majority of the complaint is focused on these events, the latter portion of the

4    complaint claims that defendants Chase, HSBC, Resmae, Cal-Western, "and others" conspired

5    with defendant Jones and the DRE, using "their official position[s] in an unconstitutional

6    manner" to retaliate against plaintiff in regard to his short sale purchase of a home on December

7    15, 2008.  Id. at 8.  Although closing was to occur on January 15, 2009, plaintiff claims that

8    Chase Home Finance initiated foreclosure proceedings on the property on January 5, 2009, in

9    violation of the short sale agreement, in retaliation for plaintiff's exposure of their predatory

10   lending practices, and because he had acted as a broker in the sale of property that fell through,

11   resulting in the lawsuit mentioned above regarding the disputed deposit payment.[3]  Id. at 9.  The

12   complaint additionally claims that plaintiff's attorneys, defendants Wyatt and Hardy Erich,

13   Brown & Wilson, were negligent and engaged in fraud "by allowing the civil rights violations to

14   occur," despite representing plaintiff's interests.  Id. at 10.

15        Plaintiff's claims complaining of the state court judgments may be jurisdictionally barred

16   by the Rooker-Feldman doctrine.  The Rooker–Feldman doctrine occupies "narrow ground."

17   Skinner v. Switzer, 562 U.S. 521, 131 S.Ct. 1289 (2011).  "'The Rooker–Feldman doctrine

18   provides that federal district courts lack jurisdiction to exercise appellate review over final state

19   court judgments.'"  AmerisourceBergen Corp. v. Roden, 495 F.3d 1143, 1153 (9th Cir.2007)

20   (quoting Henrichs v. Valley View Dev., 474 F.3d 609, 613 (9th Cir.2007)).  "Essentially, the

21   doctrine bars 'state-court losers complaining of injuries caused by state-court judgments rendered

22   before the district court proceedings commenced' from asking district courts to review and reject

23   those judgments."  Henrichs, 474 F.3d at 613 (quoting Exxon Mobile Corp. v. Saudi Basic Indus.

24   Corp., 544 U.S. 280, 284, 125 S.Ct. 1517 (2005)); *accord* Reusser v. Wachovia Bank, N.A., 525

25   F.3d 855, 859 (9th Cir.2008).

26        The Rooker–Feldman doctrine may also apply, however, where the parties do not directly

27

28   _____

[3]  The address of the property at issue is the same address that is listed as plaintiff's address of
record in this case.

4

1    contest the merits of a state court decision, but file an action that constitutes a "de facto" appeal

2    from a state court judgment.  Reusser, 525 F.3d at 859.  Such a de facto appeal exists where

3    "claims raised in the federal court action are 'inextricably intertwined' with the state court's

4    decision such that the adjudication of the federal claims would undercut the state ruling or require

5    the district court to interpret the application of state laws or procedural rules."  Id. (citation and

6    quotation marks omitted).  "Once a federal plaintiff seeks to bring a forbidden defacto appeal ...,

7    that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the

8    state court judicial decision from which the forbidden de facto appeal is brought."  Noel v. Hall,

9    341 F.3d 1148, 1158 (9th Cir.2003); see also Bianchi v. Rylaarsdam, 334 F.3d 895, 900 n. 4 (9th

10   Cir.2003) ("The Rooker–Feldman doctrine prevents lower federal courts from exercising

11   jurisdiction over any claim that is 'inextricably intertwined' with the decision of a state court,

12   even where the party does not directly challenge the merits of the state court's decision but rather

13   brings an indirect challenge based on constitutional principles.").  "Where the district court must

14   hold that the state court was wrong in order to find in favor of the plaintiff, the issues presented to

15   both courts are inextricably intertwined."  Doe & Associates Law Offices v. Napolitano, 252 F.3d

16   1026, 1030 (9th Cir.2001).

17        Here, with respect to the DRE, although plaintiff does not specifically seek to overturn the

18   state court judgment affirming the disciplinary action against him, his claims are clearly

19   "inextricably intertwined" with that judgment because a decision in this case favorable to plaintiff

20   would necessarily require this court to make determinations inconsistent with the state court's

21   judgment regarding the finding that plaintiff failed to challenge the default decision within the

22   time period allowed, and his petition was untimely, as well as the finding by the DRE that

23   plaintiff committed fraud and/or negligence in directing the seller's attorney to make

24   disbursements from the payment made by the buyer.  The judicially noticed facts, as set forth

25   above, show that plaintiff's petition for writ of mandamus appealing an administrative decision

26   revoking plaintiff's real estate license based on his default was denied by the trial court, and that

27   decision was affirmed by the California Court of Appeals.  That decision has not been disturbed.

28   Because the state administrative tribunal found plaintiff had defaulted in the administrative

1   proceedings, and that the allegations of fraud and negligence in the accusation had been proved

2   by clear and convincing documentary evidence, resulting in the revocation of his real estate

3   license, it necessarily follows that defendants here who were involved in those proceedings did

4   not engage in a conspiracy to cause this result but acted in a legal fashion.  Plaintiff's claims in

5   this action would require this court to make findings contrary to these determinations made by the

6   state administrative tribunal and state courts.  For instance, plaintiff's claims premised on

7   violations of the Due Process and Equal Protection clauses of the Constitution, the Civil Rights

8   Act, 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Sherman Act, if

9   meritorious, would all require this court to determine that defendants had no right to take

10  disciplinary action against a licensee such as plaintiff who had previously been exonerated from

11  wrongdoing related to licensing activities, and that defendants revoked his license without lawful

12  cause.  Accordingly, such causes of action are "inextricably intertwined" with the prior state court

13  conviction and, therefore, are barred under the Rooker–Feldman doctrine.  Doe & Associates Law

14  Offices, 252 F.3d at 1030.

15        Even if the claims barred under the Rooker-Feldman doctrine were permitted to go

16  forward against the DRE and the other defendants, the complaint does not appear to have a proper

17  jurisdictional basis.

18        A federal court is a court of limited jurisdiction, and may adjudicate only those cases

19  authorized by the Constitution and by Congress.  See Kokkonen v. Guardian Life Ins. Co., 511

20  U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994).  U.S. Const. Art. III, § 1 provides that the judicial

21  power of the United States is vested in the Supreme Court, "and in such inferior Courts as the

22  Congress may from time to time ordain and establish."  Congress therefore confers jurisdiction

23  upon federal district courts, as limited by U.S. Const. Art. III, § 2.  See Ankenbrandt v. Richards,

24  504 U.S. 689, 697-99, 112 S. Ct. 2206, 2212 (1992).  Lack of subject matter jurisdiction may be

25  raised at any time by either party or by the court.  See Attorneys Trust v. Videotape Computer

26  Products, Inc., 93 F.3d 593, 594-95 (9th Cir. 1996).

27        The basic federal jurisdiction statutes, 28 U.S.C. §§ 1331 & 1332, confer "federal

28  question" and "diversity" jurisdiction, respectively.  Statutes which regulate specific subject

6

1  matter may also confer federal jurisdiction. See generally, W.W. Schwarzer, A.W. Tashima & J.

2  Wagstaffe, Federal Civil Procedure Before Trial § 2:5.  Unless a complaint presents a plausible

3  assertion of a substantial federal right, a federal court does not have jurisdiction. See Bell v.

4  Hood, 327 U.S. 678, 682, 66 S. Ct. 773, 776 (1945).  A federal claim which is so insubstantial as

5  to be patently without merit cannot serve as the basis for federal jurisdiction. See Hagans v.

6  Lavine, 415 U.S. 528, 537-38, 94 S. Ct. 1372, 1379-80 (1974).

7          For diversity jurisdiction pursuant to 28 U.S.C. § 1332, each plaintiff's state citizenship

8  must be diverse from each defendant, and the amount in controversy must exceed $75,000.  For

9  federal question jurisdiction pursuant to 28 U.S.C. § 1331, the complaint must either (1) arise

10  under a federal law or the United States Constitution, (2) allege a "case or controversy" within the

11  meaning of Article III, section 2, or (3) be authorized by a jurisdiction statute. Baker v. Carr, 369

12  U.S. 186, 198, 82 S. Ct. 691, 699-700, 7 L. Ed. 2d 663 (1962).

13          The claims pertaining to plaintiff's previous state court lawsuits and the revocation of his

14  realtor's license mention the Equal Protection and Due Process clauses, the Civil Rights Act, the

15  Sherman Act, the ADA, and the Rehabilitation Act in conclusory fashion only, and for the most

16  part only in the caption and the jurisdictional paragraphs. See ECF No. 1 at 1, 2, 3.  The

17  complaint mentions federal allegations in the body of the complaint only twice, and only in

18  passing.  For example, plaintiff alleges "Defendant DEPARTMENT owes a mandatory duty of

19  care not to act against or deprive Plaintiff from the use of his professional license without lawful

20  cause or basis set forth within the provisions and authority of the Due Process and Equal

21  Protection Clauses." Id. at 6.  The only other reference to federal law is the allegation that

22  revocation of plaintiff's license violates the Fourteenth Amendment. Id. at 8.  The other

23  references to federal law are in the jurisdictional paragraphs only. Id. at 2-3.

24          Although plaintiff refers to state law violations such as fraud, malice, defamation, and the

25  California Constitution in his description of the alleged violations, (ECF No. 1 at 4, 6, 7, 8), he

26  has failed to allege any federal constitutional or statutory violations in the body of his complaint.

27  The drafting of a false accusation and a false administrative record, as plaintiff alleges, id. at 6, 7,

28  does not implicate the federal constitution.

7

1    Nor has plaintiff set forth how each defendant violated at least one of the federal statutes

2    or the constitution, and how each defendant did so.

3    The caption and jurisdictional clause reference the ADA; however, there is no claim set

4    forth under this act.  Title II provides that "no qualified individual with a disability shall, by

5    reason of such disability, be excluded from participation in or be denied the benefits of the

6    services, programs, or activities of a public entity, or be subject to discrimination by such entity."

7    42 U.S.C. § 12132.

8    Title II of the ADA was modeled after the Rehabilitation Act itself.  Duvall v. County of

9    Kitsap, 260 F.3d 1124, 1135 (9th Cir.2001).  Therefore, the elements of the ADA and RA claim

10   are functionally the same.  In order to state a claim that a public program or service violated Title

11   II of the ADA, a plaintiff must show: he is a "qualified individual with a disability"; he was either

12   excluded from participation in or denied the benefits of a public entity's services, programs, or

13   activities, or was otherwise discriminated against by the public entity; and such exclusion, denial

14   of benefits, or discrimination was by reason of his disability.  Simmons v. Navajo County, Ariz.,

15   609 F.3d 1011, 1021 (9th Cir.2010); McGary v. City of Portland, 386 F.3d 1259, 1265 (9th

16   Cir.2004).

17   "In suits under Title II of the ADA ... the proper defendant usually is an organization

18   rather than a natural person.... Thus, as a rule, there is no personal liability under Title II."

19   Tenerelli v. Shasta County Jail, 2015 WL 2159551, *3 (E.D.Cal. May 7, 2015) (quotations and

20   citations omitted).  Individuals are not proper defendants under Title II at of the ADA.  "[A]

21   plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual

22   capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation

23   Act."  Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002).  The proper defendant for an

24   ADA claim is the public entity responsible.  Everson v. Leis, 556 F.3d 484, 501 & n. 7 (6th Cir.

25   2009).

26   It is debatable whether the DRE is a public entity which provided a program, service or

27   activity.  Assuming arguendo that it is, it would be the only defendant subject to such a claim.  If

28   plaintiff seeks to make an ADA claim on amendment, he must make a showing in accordance

8

1    with the authority outlined above.  Any future claim under the ADA against any other defendants

2    will be dismissed.

3         The complaint also references the Sherman Act only in passing, and makes no mention of

4    which section of that Act plaintiff seeks to enforce.  Section 1 of the Sherman Act outlaws

5    agreements or conspiracies which unreasonably restrain trade.  15 U.S.C. § 1; NYNEX Corp. v.

6    Discon, Inc., 525 U.S. 128, 133 (1998).  To establish a claim for unreasonable restraint of trade,

7    "a plaintiff must allege sufficient facts to demonstrate three elements: (1) the existence of a

8    contract, combination, or conspiracy among two or more separate entities that (2) unreasonably

9    restrains (3) interstate trade or commerce."  Columbia River People's Util. Dist. v. Portland Gen.

10   Elec. Co., 217 F.3d 1187, 1189–90 (9th Cir.2000) (citation omitted).

11        Section 2 of the Sherman Act prohibits actual or attempted monopolization of trade or

12   commerce.  15 U.S.C. § 2.  To establish a claim for actual or attempted monopolization, a

13   plaintiff must establish four elements: "(1) specific intent to control prices or destroy competition;

14   (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous

15   probability of achieving 'monopoly power'; and (4) causal antitrust injury."  Rebel Oil Co. v. Atl.

16   Richfield Co., 51 F.3d 1421, 1432–33 (9th Cir.1995).  Section 4 of the Clayton Act provides for a

17   private right of action to enforce the Sherman Act.  It states that "any person who shall be injured

18   in his business or property by reason of anything forbidden in the antitrust laws may sue

19   therefor."  15 U. S. C. § 15(a).  See also Knevelbaard Dairies v. Kraft Foods, Inc., 232 F.3d 979,

20   987 (9th Cir.2000).

21        Plaintiff has failed to state any claim at all under the Sherman Act.  If he intends to

22   proceed with this claim, he must specify under which section of the Sherman Act he is

23   proceeding, and must establish all elements of a claim as set forth above.

24        Plaintiff also merely references 42 USC §§ 1983 and 1985.[4]  The Civil Rights Act

25   provides as follows:

26            Every person who, under color of [state law] . . . subjects, or causes
             to be subjected, any citizen of the United States . . . to the

27

28   _____
     [4] Plaintiff has incorrectly referenced 11 U.S.C. §§ 1983 and 1985 in the caption of his complaint.

                                          9

1
2

deprivation of any rights, privileges, or immunities secured by the
Constitution . . . shall be liable to the party injured in an action at
law, suit in equity, or other proper proceeding for redress.

3    42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

4    actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

5    Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

6    (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

7    meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

8    omits to perform an act which he is legally required to do that causes the deprivation of which

9    complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

10           To state a claim under § 1983, there must be state action by defendant.  Gritchen v.

11   Collier, 254 F.3d 807, 812 (9th Cir. 2001).  Although a private individual may be liable under §

12   1983 if he conspires with state actors to violate plaintiff's rights, Franklin v. Fox, 312 F.3d 423,

13   441 (9th Cir. 2002), plaintiff has not made such an allegation against any of the defendants.  A

14   section 1983 claim can lie against a private party only when "he is a willful participant in joint

15   action with the State or its agents."  Dennis v. Sparks, 449 U.S. 24, 27, 101 S.Ct. 183 (1980). In

16   this case, there are no defendants who are state actors, and plaintiff has not alleged that any

17   defendants acted in conjunction with the state or its agents.  For example, privately employed

18   attorneys do not act on behalf of the state, but rather on behalf of their clients.  See Briley v. State

19   of California, 564 F.2d 849, 855 (9th Cir.1977).

20           Plaintiff will be provided leave to amend his complaint to allege state action by the DRE,

21   and whether any private defendants conspired with or entered joint action with the DRE.  If

22   plaintiff does so amend his complaint, he must allege the specific facts of the conspiracy, as well

23   as all of the facts surrounding any alleged violations of his constitutional rights.  The complaint as

24   written contains less than bald conclusions and fails to state a *plausible* claim for any of the

25   grounds alleged.  Plaintiff is reminded that his claim for relief must contain sufficient factual

26   matter to state a claim to relief that is plausible on its face.  See Ashcroft v. Iqbal, 556 U.S. 662,

27   678, 129 S.Ct. 1973 (2009).  While this does not require detailed factual allegations, the claim

28   must contain more than labels and conclusions or a formulaic recitation of the elements of a cause

1    of action. See Bell Atlantic, 550 U.S. at 555.  In short, the allegations must be sufficient to put

2    defendant fairly on notice of the claims against it.  See Richmond v. Nationwide Cassel L.P., 52

3    F.3d 640, 645 (7th Cir.1995) (amended complaint with vague and scanty allegations fails to

4    satisfy the notice requirement of Rule 8); 5 C. Wright & A. Miller, Federal Practice and

5    Procedure § 1202 (2d ed.1990).  Here, this means that plaintiff must say more than that

6    defendants conspired to make accusations against plaintiff which were "false, oppressive, and

7    malicious."  See ECF No. 1 at 7.  Rather, plaintiff must identify exactly what each defendant did

8    to violate his rights, and why he thinks such action was unconstitutional.

9         Section 1985 of 42 U.S.C. proscribes conspiracies to interfere with civil rights.  Sanchez

10   v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir.1990); Karim–Panahi v. Los Angeles Police

11   Dept., 839 F.2d 621, 626 (9th Cir.1988).  The statute protects only against discrimination founded

12   upon invidious, class-based animus.  United Brotherhood of Carpenters v. Scott, 463 U.S. 825,

13   103 S.Ct. 3352 (1983); Ramirez v. City of Reno, 925 F.Supp. 681, 689 (D.Nev.1996).

14   Conspiracy claims under § 1985(3) require an allegation of racial, or perhaps otherwise class-

15   based invidiously discriminatory animus.  See Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct.

16   1790 (1971).  Regarding § 1985(2), the first clause of the subsection concerns conspiracy to

17   obstruct justice in federal courts, or to intimidate a party witness or juror in connection therewith,

18   and the second clause concerns conspiracies to affect the due course of justice in a state.  See

19   Bretz v. Kelman, 773 F.2d 1026, 1028 n. 4 (9th Cir.1985); see also Usher v. City of Los Angeles,

20   828 F.2d 556, 561 n. 4 (9th Cir.1987).  The requirement of racial or class-based animus has been

21   extended to the second clause of subsection 1985(2).  See Bretz, 773 F.2d at 1030; Usher, 828

22   F.2d at 561.

23        Here, plaintiff cannot allege any federal interest or involvement with the alleged

24   conspiracy, and therefore he would fail to state a claim under the first clause of § 1985(2).  In

25   addition, plaintiff fails to allege that any of the defendants entered an agreement to deprive

26   plaintiff of his constitutional rights due to his membership in a protected class.  See Usher, 828

27   F.2d at 560 (holding that, by alleging that racial slurs were directed against him, plaintiff alleged

28   racial animus sufficiently to survive a motion to dismiss causes of action under 42 U.S.C. §

1    1985(2) and (3)).  Nothing in the factual allegations of the complaint supports the conclusion that

2    any defendants were motivated by invidious class-based animus to conspire to violate plaintiff's

3    civil rights pursuant to 42 U.S.C. § 1985(3).  These aforementioned attempts to create federal

4    subject matter jurisdiction by inserting claims related to civil rights violations and discrimination

5    must fail.

6         A less stringent examination is afforded pro se pleadings, see Haines v. Kerner, 404 U.S.

7    519, 520, 92 S.Ct. 594 (1972), but simple reference to federal law does not create subject matter

8    jurisdiction.  Avitts v. Amoco Prod. Co., 53 F.3d 690, 694 (5th Cir.1995).  Subject matter

9    jurisdiction is created only by pleading a cause of action that is within the court's original

10   jurisdiction.  Id.  See also Kennedy v. H & M Landing, Inc., 529 F.2d 987, 989 (9th Cir.1976) (a

11   pleading will not be sufficient to state a claim under § 1983 if the allegations are mere

12   conclusions).  Plaintiff's mere reference to these federal statutes is insufficient to state a claim

13   upon which relief can be granted—for each federal statute, Plaintiff must actually explain what

14   allegations support a violation.  As plaintiff makes no claims under any of these federal statutes,

15   these claims will be dismissed with leave to amend.

16        The allegations in the second part of the complaint which pertain to plaintiff's purchase of

17   a house and alleged retaliation on the part of some defendants is problematic because it is based

18   on state law only.  Should the other claims be dismissed based on the Rooker-Feldman doctrine,

19   and these claims be the only ones that survive, there would be no federal question jurisdiction.

20        Nor is there diversity jurisdiction because plaintiff is a citizen of California, as are

21   defendants Jones, DRE, and possibly other defendants.  The fact that plaintiff is diverse from

22   some of the defendants does not help his case, (ECF No. 1 at 3), because he must be diverse from

23   each defendant.

24        While plaintiff's claims against some of the defendants, as alleged, are most likely barred

25   under the Rooker–Feldman doctrine, the court will grant plaintiff the opportunity to amend his

26   complaint in light of his pro se status and because it appears from the allegations of the complaint

27   at least possible that plaintiff might be able to allege facts demonstrating that at least some of his

28   claims against other named defendants are not jurisdictionally barred by this doctrine.  However,

12

1   plaintiff is cautioned that if he elects to file an amended complaint, he must articulate his claims

2   through factual allegations that address the deficiencies outlined above.

3        If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the events

4   complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v.

5   Cassidy, 625 F.2d 227 (9th Cir. 1980).  Also, the complaint must allege in specific terms how

6   each named defendant is involved.  In regard to section 1983 claims in particular, there can be no

7   liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a

8   defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598

9   (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743

10  (9th Cir. 1978).  Furthermore, vague and conclusory allegations of official participation in civil

11  rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir.

12  1982).]

13       In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to

14  make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended

15  complaint be complete in itself without reference to any prior pleading.  This is because, as a

16  general rule, an amended complaint supersedes the original complaint.  See Forsyth v. Humana,

17  Inc., 114 F.3d 1467, 1474 (9th Cir.1997), *overruled in part on other grounds*, Lacey v. Maricopa

18  County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  Once plaintiff files an amended complaint,

19  the original pleading no longer serves an operative function in the case.  Therefore, in an

20  amended complaint, as in an original complaint, each claim and the involvement of each

21  defendant must be sufficiently alleged.

22       Good cause appearing, IT IS ORDERED that:

23       1.  Plaintiff's request for leave to proceed in forma pauperis is granted.

24       2.  The complaint is dismissed for the reasons discussed above, with leave to file an

25  amended complaint within twenty-eight (28) days from the date of service of this Order.  The

26  amended complaint must comply with the requirements of the Federal Rules of Civil Procedure,

27  and the Local Rules of Practice; the amended complaint must bear the docket number assigned

28  ////

1    this case and must be labeled "Amended Complaint;" failure to file an amended complaint will

2    result in a recommendation that this action be dismissed.

3    Dated: February 1, 2016

4                                    /s/ Gregory G. Hollows

5                              UNITED STATES MAGISTRATE JUDGE

6

7

8

9    GGH:076/Gonzalez2448.amd

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28