1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DANIEL GONZALEZ,                        No.  2:15-cv-2448-TLN-KJN PS

12              Plaintiff,                    FINDINGS AND RECOMMENDATIONS ON
                                             DEFENDANTS' MOTION FOR
13        v.                                 TERMINATING SANCTIONS AND
                                             PLAINTIFF'S ANCILLARY MOTIONS;
14   KYLE THOMAS JONES, et al.,              AND ORDER STAYING CASE

15              Defendants.                   (ECF Nos. 197, 198, 202, 211, 212.)

16

17        This case is related to plaintiff's 2010 revocation of his real estate license, as against

18   individual employees of the Department ("Bureau") of Real Estate.  (See ECF No. 136 at 2.)  In

19   September of 2020, defendants renewed their motion for terminating sanctions, arguing that

20   plaintiff has failed to comply with the court's orders and failed to prosecute his case by

21   continually evading their attempts to depose him.  (ECF No. 202.)  Plaintiff appeared at a January

22   14, 2021 deposition but refused to answer defendants' questions.  (ECF No. 213.)

23        The court now recommends plaintiff's ancillary motions (ECF Nos. 197, 198, 211, 212)

24   be denied, defendants' motion for terminating sanctions be granted, and this case be dismissed.[1]

---

[1] Plaintiff represents himself in this action without the assistance of counsel; thus, this case
proceeds before the undersigned pursuant to Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).
For terminating sanctions, the undersigned only has authority to issue findings and
recommendations.  See Local Rule 304.  For plaintiff's non-dispositive motions, the undersigned
has authority to issue orders, but refrains from doing so here; should the district judge reject the
recommendations for sanctions, these matters will require further consideration

1

## **BACKGROUND**

2        Plaintiff, proceeding without the assistance of counsel and with in-forma-pauperis status,

3 filed his complaint in November of 2015, alleging claims related to the Bureau's 2010 revocation

4 of his real estate license.  (See ECF Nos. 1, 6.)  Prior to filing this case, plaintiff's dispute with the

5 Bureau wound its way through the California State Court system.  (See ECF No. 6 at ¶¶ 19-112.)

6 Between 2015 and 2018, this case saw multiple rounds of dismissal motions, a narrowing of the

7 claims, and the addition and dismissal of multiple defendants.  (See ECF Nos. 7, 11, 43, and 74).

8 Currently, plaintiff maintains claims against seven individual employees of the Bureau, for

9 alleged violations of his constitutional rights (42 U.S.C. § 1983 and Cal. Bane Act) as well as a

10 claim for allegedly Falsifying a Record/Perjury (Cal. Gov. Code § 820.21).  (See ECF No. 136 at

11 2.)

12        In December of 2018, the case was reassigned to the undersigned.  (ECF No. 130.)  A

13 scheduling order was issued, setting the close of fact discovery for October 18, 2019.  (ECF No.

14 136 at p. 4.)  In June 13, 2019, defense counsel emailed plaintiff to request his availability in July

15 or August for a deposition.  (ECF No. 149-1 at 3.)  Plaintiff responded on June 27 saying he was

16 not available those months, arguing the merits of his case, and concluding that he had "other

17 personal and medical problems created by [defendants] to be harassed by a deposition."  (Id. at 8.)

18 Defense counsel noted his right to depose plaintiff under Rule 30, and informed plaintiff that

19 defendants would be filing a motion to compel if plaintiff did not confer on dates.  (Id. at 11.)

20 Plaintiff did not respond, and a month later counsel proposed three dates for an August

21 deposition.  (Id. at 17, 21.)  The deposition was ultimately noticed for August 20, 2019, but

22 plaintiff did not appear.  (Id. at 29.)  In September and early October, defense counsel wrote and

23 called plaintiff about conferring over defendants' forthcoming motion to compel.  (Id. at 35, 37,

24 40.)  On October 4, plaintiff responded by noting his medical conditions, arguing the merits of his

25 case, again accusing defense counsel of harassment related to the attempts to take the deposition.

26 (Id. at 43.)  However, plaintiff also noted he could be available in December 2019 for the

27 deposition.  (Id.)  Based on this last statement, defendants sought a limited extension of the

28 discovery schedule to take plaintiff's deposition.  (ECF No. 149, 151.)  The court granted the

1    extension, and plaintiff was ordered to sit for a deposition by the end of December of 2019.  (Id.)

2          On December 4, defendants filed a motion to compel, submitting communications

3    between the parties indicating plaintiff was still refusing to sit for the deposition.  (ECF No. 153.)

4    This motion was set for a December 19, 2019 hearing.  Plaintiff filed multiple opposition briefs,

5    arguing that the schedule should be altered to accommodate more discovery for both sides (ECF

6    No. 152), that the deposition itself was unconstitutional and should not be permitted at all (ECF

7    No. 154), or if it was to occur, it should happen by written deposition (ECF No. 155, the motion

8    for protective order).  Plaintiff failed to appear at the December 19 hearing, so the court ordered

9    plaintiff to show cause why the case should not be dismissed for failure to prosecute.  (ECF No.

10   158.)  Plaintiff responded, attempting to demonstrate his efforts to prosecute the case.  (ECF Nos.

11   159, 160.)  The court discharged the order to show cause, denied plaintiff's motion for a

12   protective order, granted defendants' motion to compel, and ordered plaintiff to sit for an oral

13   deposition by February 6, 2020.  (ECF No. 161.)

14         On January 24, 2020, defendants requested an extension of time to meet and confer on the

15   date of the deposition, noting that plaintiff stated he was close to retaining counsel.  (ECF No.

16   162.)  The court granted the extension, ordered plaintiff to submit his attorney's contact

17   information, and reiterated that plaintiff was to sit for a deposition by February 6.  (ECF No. 163.)

18   On January 31, attorney William Wright filed a motion on plaintiff's behalf.  (ECF No. 165.)

19         Attorney Wright appeared alongside plaintiff at the February 6 deposition.  However, the

20   deposition concluded 25 minutes later, after plaintiff refused to answer substantive questions

21   regarding his claims, attempted himself to object to defense counsel's questions, began arguing

22   over irrelevant matters, and directed invectives and conspiracy theories at defendants.  (See ECF

23   No. 168-1.)  Defendants moved for terminating sanctions.  (ECF No. 168.)  The court held a

24   hearing on an ancillary matter on February 13, where attorney Wright appeared alongside

25   plaintiff.  (ECF Nos. 170.)  At the hearing, the court discussed the failed deposition, and warned

26   plaintiff that his conduct at the deposition was "completely unacceptable."  (See ECF No. 177.)

27   However, given attorney Wright's assurances that his client would participate in a further

28   deposition, the undersigned denied defendants' motion for terminating sanctions.  (ECF No. 171

                                              3

at 2 ¶ 3.)  This denial was without prejudice, and plaintiff was warned that if he "fail[ed] to participate in a rescheduled deposition, the court will strongly consider a renewed motion by defendants to impose more-severe sanctions - including the dismissal of this case with prejudice." (Id.)

The case was then referred back to the assigned district judge for further scheduling. (ECF No. 179.)  In May of 2020, the district judge granted the parties' extension of time to complete defendants' deposition of plaintiff, given the shelter-in-place order related to the Covid-19 pandemic.  (ECF Nos. 181, 183.)  In June, plaintiff began filing motions on his own behalf, and shortly after attorney Wright moved to withdraw.  (ECF Nos. 184, 186, 187, 188, 193, 195.) In August, the district court extended the deposition deadline to September 30, 2020, granted attorney Wright's motion to withdraw, and referred the case back to the undersigned due to plaintiff's pro se status.  (ECF Nos. 194, 196.)

In early August of 2020, defendants requested that plaintiff provide his availability for a rescheduled deposition.  (ECF No. 202-1 at Ex. A.)  Plaintiff did not provide dates, but instead contended defense counsel was harassing him and ignoring the merits of the case.  (Id. at Ex. B.) Defendants served plaintiff with a notice of deposition on August 14, with a deposition date of September 2, 2020.  (Id. at Ex. C.)  Plaintiff responded by email, stating he was unavailable on that date.  (Id. at Ex. D.)  Defense counsel replied, noting plaintiff failed to provide dates of availability prior to the notice,  but re-noticed the deposition for September 15.  (Id. at Ex. F.) Plaintiff responded, stating "it should be clear that I will not appear at your deposition on September 15" (as well as, again, arguing the merits of his case).  (Id.)

On August 28, 2020, plaintiff filed two renewed motions to alter or amend, arguing he should not be compelled to sit for a deposition (as well as arguing points concerning Attorney Wright's withdrawal).  (ECF Nos. 197, 198.)  However, because plaintiff noticed these motions before the assigned district judge, and because the case had been referred to the undersigned due to plaintiff's pro se status, the district judge vacated the hearings and ordered plaintiff to re-notice the motions before the undersigned.  (ECF No. 199.)  In early September 2020, defendants renewed their motion for terminating sanctions (the motion currently at issue in this order).  (ECF

4

No. 202.)  Therein, defendants noted plaintiff's continued refusal to sit for his deposition and continued non-compliance with the court's orders.  Plaintiff requested multiple extensions of time to file his opposition due to health issues, and the court ultimately extended the opposition deadline to January 28, 2021.  (ECF Nos. 203, 204, 205, 206, 207, 208.)

In October of 2020, the parties conferred over potential deposition dates, as well as procedural details for the deposition.  (ECF No. 213 at Ex. A.)  The parties agreed to hold a remote deposition on November 9, 2020, with just plaintiff, defense counsel, and a court reporter in attendance.  (Id.)  On the 9th, plaintiff appeared, but did so approximately 30 minutes late and then informed counsel he had to leave two hours later for a medical procedure.  (Id. at 6, ¶ 4.)  However, plaintiff indicated he wanted to resume the deposition at a later date, and defense counsel agreed to a further postponement.  (Id.)

On December 28, plaintiff sent a letter to defense counsel stating he would be available to resume the deposition after January 12, 2021.  (Id. at ¶ 5.)  On January 6, 2021, defendants served a notice for a January 14 deposition, and followed up by email on January 10.  (Id. at Ex. E.)  On January 13, plaintiff emailed counsel to state he was objecting to the deposition because he had not fully recovered from surgery, could not read small print, and would only appear to record objections.  (Id. at Ex. F.)  Counsel attempted to assuage plaintiff's concerns about the size of the text in the exhibits, and noted plaintiff's previous statements about his availability after the 12th.  (Id.)  Plaintiff did not respond to counsel's offers, then appeared at the remote deposition the next day and refused to answer questions.  (ECF No. 215.)

On January 14, 2021, plaintiff filed his opposition to terminating sanctions.  (ECF No. 209.)  Plaintiff also filed three ancillary documents concerning the service of the notice, a renewed motion for protective order concerning the deposition, and a request for further extension of time to re-notice his August 28, 2020 motions.  (ECF Nos. 210, 211, 212.)  Defendants replied on January 20, and filed the transcript of the January 14 deposition on January 27, 2021.  (ECF Nos. 213, 215.)  The court took the motion for sanctions under submission and vacated the hearing.  (ECF No. 214.)

///

5

1    **DISCUSSION**

2    **Parties' Arguments**

3        Defendants' argument in favor of terminating sanctions is straightforward— since the

4    summer of 2019, plaintiff has resisted almost every attempt by defendants to depose him.

5    Plaintiff has been under an order to sit for the deposition since February 2020, and even though

6    he did appear at a deposition in November 2020, he arrived late and left 2 hours later.  Then, after

7    defendants tried to resume the deposition in January 2021, plaintiff returned to his tactics of delay

8    and obfuscation, and refused to answer questions about the merits of his claims.  Thus, defendants

9    contend plaintiff's case should be dismissed under Rule 41(b)[2] for failing to follow the court's

10   orders and failing to prosecute his case.  (ECF No. 213.)

11       By contrast, plaintiff's arguments are myriad and abstruse, as summarized below:

- Plaintiff's November 9 deposition testimony "exposed the . . . defendants' damaging conduct and fraud" and "negates the motion" to depose him. (ECF Nos. 209, 211.)
- Defendants' January 6 notice was defective, and plaintiff had not consented to notice by email (re: the January 10 email).  (ECF No. 209.)
- Defense counsel has a conflict of interest and cannot question plaintiff in a deposition.  (ECF No. 209.)
- Plaintiff has a motion for protective order pending in the court that seeks to limit the deposition's scope.  (ECF No. 209, 210, 211.)
- Plaintiff is competent as a legal expert on all facts and legal conclusions expressed in the underlying Superior Court case.  (ECF No. 209.)
- Plaintiff's eyesight has not fully recovered from his November 2020 surgery.  (ECF No. 211.)
- By attempting to depose plaintiff, defendants' are acting in bad faith, are harassing plaintiff, are doing so "without standing to seek a terminating sanction," and are a part of a corrupt practice.  (ECF No. 211.)
- Plaintiff should be allotted an additional 60 days to consult with potential counsel, brief another opposition motion and protective order, and generally evaluate his case.  (ECF Nos. 209 212.)

24   Plaintiff argues the terminating sanctions should be denied, and his other relief should be granted.

25   ///

26   ///

27

28   ─────────────────────
     [2] Citation to the "Rule(s)" are to the Federal Rule of Civil Procedure, unless otherwise noted.

**A.  Case-dispositive sanctions are in order for plaintiff's ceaseless intransigence.**

**Legal Standards**

Federal Rule of Civil Procedure 30 states that "[a] party may, by oral questions, depose any person, including a party, without leave of court[.]"  Rule 37 governs a party's failure to cooperate in discovery.  Subsection (a) allows a party to move for an order compelling discovery in the court where the action is pending, and specifically covers when "a deponent fails to answer a question asked under Rule 30[.]"  Rules 37(a)(1), (2), and (3)(B)(i).  Rule 37 also states that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Rule 37(b)(2) states that where a party "fails to obey an order to provide or permit discovery . . . , the court where the action is pending may issue further just orders."  These further orders may include:

> i.    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> ii.   prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> iii.  striking pleadings in whole or in part;
> iv.   staying further proceedings until the order is obeyed; [or]
> v.    dismissing the action or proceeding in whole or in part[.]

Id.  Rule 37(b)(2) also states that "instead of or in addition to the orders above, the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the [discovery] failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Rule 37(b)(2)(C).

Further, under Federal Rule of Civil Procedure 41(b), a district court may impose sanctions, including involuntary dismissal of a plaintiff's case, where that plaintiff fails to prosecute his or her case, or fails to comply with the court's orders, the Federal Rules, or the court's local rules.[3]  See Hells Canyon Preservation Council v. U.S. Forest Serv., 403 F.3d 683,

---

[3] A court may also impose sanctions, including terminating sanctions, as part of its inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).  The Ninth Circuit has held that the same five-factor test utilized in the context of Rule 37 sanctions is applied when considering sanctions under the court's "inherent power."  Leon, 464 F.3d at 958 n.4.

7

689 (9th Cir. 2005) (stating that courts may dismiss an action pursuant to Federal Rule of Civil

Procedure 41(b) for a plaintiff's failure to prosecute or comply with the rules of civil procedure or

the court's orders); Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995) (per curiam) ("Failure to

follow a district court's local rules is a proper ground for dismissal"); Ferdik v. Bonzelet, 963

F.2d 1258, 1260 (9th Cir. 1992) ("Pursuant to Federal Rule of Civil Procedure 41(b), the district

court may dismiss an action for failure to comply with any order of the court"); see also

Thompson v. Housing Auth. of City of L.A., 782 F.2d 829, 831 (9th Cir. 1986) (per curiam)

(stating that district courts have inherent power to control their dockets and may impose sanctions

including dismissal or default).  This court's Local Rules are in accord.  See Eastern District

Local Rule 110 ("Failure of counsel or of a party to comply with these Rules or with any order of

the Court may be grounds for imposition by the Court of any and all sanctions authorized by

statute or Rule or within the inherent power of the Court.").  The rules apply not only to litigants

represented by counsel, but to self-represented parties as well.  King v. Atiyeh, 814 F.2d 565, 567

(9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other

litigants.") (overruled on other grounds); see also Local Rule 183(a) ("Any individual

representing himself or herself without an attorney is bound by the Federal Rules of Civil or

Criminal Procedure, these Rules, and all other applicable law.  All obligations placed on 'counsel'

by these Rules apply to individuals appearing in propria persona.  Failure to comply therewith

may be ground for dismissal, judgment by default, or any other sanction appropriate under these

Rules.").

        In determining whether to dismiss a case for failure to prosecute, failure to comply with a

court order, or failure to comply with the local rules, the Ninth Circuit counsels a district court to

consider five factors.  See Ferdik, 963 F.2d at 1260.  These factors are:

> (1) the public's interest in expeditious resolution of litigation;
> (2) the court's need to manage its docket;
> (3) the risk of prejudice to the defendants;
> (4) the public policy favoring disposition of cases on their merits; and
> (5) the availability of less drastic alternatives.

Id. at 1260-61; accord Pagtalunan v. Galaza, 291 F.3d 639, 642-43 (9th Cir. 2002).  The Ninth

Circuit Court of Appeals has stated that the district court "need not make explicit findings

1    regarding each of these factors," IDX Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006),

2    and that this multi-factor test is "not mechanical," Conn. Gen. Life Ins. Co. v. New Images of

3    Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007).  The test "provides the district court with a

4    way to think about what to do, not a set of conditions precedent for sanctions or a script that the

5    district court must follow."  Id.

6          As the Ninth Circuit has observed, "[a] terminating sanction . . . is very severe," and

7    "[o]nly willfulness, bad faith, and fault [can] justify terminating sanctions."  Id.; see also Leon,

8    464 F.3d at 958 (describing the sanction of dismissal as "harsh"); Computer Task Group, Inc. v.

9    Brotby, 364 F.3d 1112, 1115 (9th Cir. 2004) (per curiam) ("[W]here the drastic sanctions of

10   dismissal or default are imposed, . . . the range of discretion is narrowed and the losing party's

11   noncompliance must be due to willfulness, fault, or bad faith.").  Thus, the court must take into

12   account whether it has "considered lesser sanctions, whether it tried them, and whether it warned

13   the recalcitrant party about the possibility of case-dispositive sanctions."  Conn. Gen. Life, 482

14   F.3d 1096; accord Leon, 464 F.3d at 960.  Further the Ninth Circuit has stated that for case-

15   dispositive sanctions based on discovery violations, the key is whether the discovery violation

16   "threaten[s] to interfere with the rightful decision of the case."  Conn. Gen. Life, 482 F.3d at

17   1097.

18          **Analysis**

19         Here, court finds four of the Ferdik factors weigh in favor of dismissal, and the remaining

20   factor is outweighed by the overwhelming number of facts supporting dismissal.  Though the

21   court is not required to "make explicit findings regarding each of these factors," Leon, 464 F.3d at

22   958, the undersigned will do so here in order to emphasize the extent of plaintiff's misconduct.

23          Factors One and Two

24         The public's interest in expeditious resolution of the litigation and the court's need to

25   manage its docket both weigh in favor of dismissal.  As noted in the background section above,

26   this case has already been delayed by plaintiff's continued refusal to sit for a deposition and

27   answer defendants' questions regarding the merits of the case.  Plaintiff's obstinance began to

28   manifest in June 2019, shortly after the undersigned issued the scheduling order with discovery

deadlines.  (See ECF No. 149-1 at 8 (June 2019, plaintiff claims defense counsel was attempting to "harass[ him] by a deposition."); Id. at 29 (August 2019, plaintiff fails to appear for the properly-noticed deposition); Id. at 43 (October 2019, plaintiff reasserts belief that counsel's attempt to depose him was harassing); ECF Nos. 152, 154, 155 (December 2019, plaintiff files motions attempting to halt the deposition, which bordered on frivolity and which were rejected); ECF No. 168-1 (February 2020, deposition transcript demonstrating plaintiff's unhinged behavior during a 25 minute deposition); ECF No 177 (February 2020, court warns plaintiff that his deposition conduct was "completely unacceptable."); ECF No. 202-1 at Ex. A. (August 2020, plaintiff resumes asserting his 'deposition is harassment' arguments); Id. at Ex. F. (plaintiff tells defense counsel "it should be clear that I will not appear at your deposition on September 15.").  True, in November 2020 plaintiff did seem to turn a corner when he conferred with counsel on dates and appeared at the deposition.  (ECF No. 213).  However, even this 'participation' lacked full cooperation, as he apparently arrived late to his video deposition, then surprised counsel by indicating he had to leave 2 hours later.  (Id.)  Then, when defendants attempted to resume the deposition in January 2021, plaintiff resumed his delay tactics.  (Id. at Ex. F (plaintiff emails counsel objecting to the January 14 deposition); ECF No. 215 (plaintiff appears by video at the January 14 deposition but refuses to answer any questions); see also ECF Nos. 210, 211, 212 (plaintiff's January 2021 ancillary filings challenging the deposition, which as discussed in Section B below border on frivolity).)

      In addition to plaintiff's delays in connection with the deposition, he has consistently filed numerous other motions that border on frivolity, and consistently has failed to follow various orders of the court—despite clear instructions on the steps he should take and ample extensions of time to correct his procedural missteps.  The court will not belabor the point, but briefly notes the following entries demonstrating plaintiff's proclivity for filing frivolous documents and disregarding court orders.  (See ECF Nos. 87 (denial of motion to disqualify where plaintiff simply disagreed with the prior magistrate judge's rulings in the case); 93 (recommendation to deny TRO on plaintiff's request to "renew" a Superior Court injunction that had expired, against companies that were not parties to this federal court action); 95 (adopting TRO rejection in full);

1   118 (order from Ninth Circuit dismissing interlocutory appeal of TRO rejection for lack of

2   jurisdiction); 113 (plaintiff's "notice of intent" to file a motion regarding previous dismissal

3   motion); 117 (district judge's order denying without prejudice plaintiff's motion to admit

4   deposition transcripts due to plaintiff's failure to file the transcripts with the court); 125 (district

5   court's order for plaintiff to notice his motion before the undersigned); 131 (undersigned's order

6   denying two previous motions for failure to follow a court order); 140 (reminding plaintiff of his

7   discovery obligations under the Federal Rules of Civil Procedure); 147 (requiring plaintiff to

8   resubmit his "ex parte" motion with notice to defendants, as defendants were in the case);

9   157/158 (noting plaintiff's failure to attend a hearing); 199 (district court's order for plaintiff to

10  re-notice two motions before the undersigned).)

11          Plaintiff's acts have caused this case to be delayed beyond the point of all reason,

12  impinging on the court's docket and nullifying the public's interest in an expeditious resolution of

13  the matter.  Ferdik, 963 F.2d at 1260; see also, e.g., Mendia v. Garcia, 2017 WL 6210603, at *7

14  (N.D. Cal. May 31, 2017) (finding plaintiff's multi-year delay in avoiding deposition impinged on

15  the expeditious resolution of the case and "has consumed much of the court's time that could have

16  been devoted to other cases on the docket.").  Further, if it is not clear from the court's exhaustive

17  recitation in the background section and analysis, plaintiff's conduct is found to be willful and in

18  bad faith.  Conn. Gen. Life, 482 F.3d at 1096; Brotby, 364 F.3d at 1115 ("[Where] the drastic

19  sanctions of dismissal or default are imposed, . . . the range of discretion is narrowed and the

20  losing party's noncompliance must be due to willfulness, fault, or bad faith"); see also, e.g.,

21  Einstein Cosmetics, LLC v. CVS Caremark Corp., 524 F. App'x 337, 339 (9th Cir. 2013) ("[T]he

22  apparent refusal of Einstein to produce its manager and CEO . . . for their depositions and its

23  failure to otherwise comply with its discovery obligations were redolent of bad faith."); Woods v.

24  Davis, 988 F.2d 127 (9th Cir. 1993) (agreeing with district court that plaintiff acted in bad faith

25  by refusing to go forward with deposition, even after counsel attempted to accommodate

26  proposed terms and after court ordered deposition, as plaintiff appeared "more desirous of

27  litigating for its own sake rather than achieving the relief sought.").

28  ///

11

1    Factor Three

2        If this case does not demonstrate a risk of prejudice to the defendants based on plaintiff's

3    delays, the court is not sure what case would.  Since June 2019, plaintiff has consistently refused

4    to give defendants any insight into the basis for his claims.  For example, plaintiff alleged

5    emotional-distress damages in his complaint.  (See ECF No. 6 at ¶¶ 58, 59, 73, 77, 91, 96, 117,

6    123, 129, 135, 147 (detailing allegations of harm).)  At the 25-minute February 2020 deposition,

7    counsel inquired into plaintiff's mental and emotional state as it related these damages, but

8    plaintiff refused to answer.[4]  (See ECF No 168-1 at 10.)  Defendants have a right to probe the

9    source and intensity of plaintiff's emotional state, as related to his claims and to his general

10   ability to proffer testimony.  See, e.g., Willis v. Mullins, 2014 WL 1154090 at *6 (E.D. Cal. Mar.

11   21, 2014) (agreeing that if the plaintiff "intends to claim mental and emotional distress from

12   Defendants' [alleged unconstitutional conduct], then the parties must be allowed to inquire into

13   [plaintiff's] state of mind when he encountered the Defendants' conduct . . . .").  Further, at the

14   January 2021 deposition, plaintiff flat-out refused to participate in any questioning, and instead

15   resorted to arguing alleged bias on the part of defense counsel, two former attorneys general of

16   California, and a former California governor, among others.  (See ECF No. 215.)   Plaintiff then

17   returned to his prior pattern of filing multiple frivolous motions that seek to further delay the

18   proceedings (See Section B, below).  (See ECF Nos. 210, 211, 212.)

19       Simply, plaintiff's year-and-a-half long refusal to answer deposition questions deprives

20   defendants of an opportunity to prepare their defense.  With the passage of time, witnesses'

21

22   [4] Q: [W]hat medication are you taking that makes it difficult for you to testify today?
     A: I'm sorry. That's private. I haven't talked to my attorney about my medications or my medical
23   records, and I -- I decline to -- I object to answering my private -- disclosing the privacy of
     medical care right now.
24   Q: Okay. Well, it's improper for you to object in your deposition . . . . But in the claims you've
     made in this case you have put your emotional condition at issue . . . . If you're taking medication,
25   related to that PTSD, that you're saying was caused by the incidents in this case, I'm entitled to
     know what medications you're taking . . . . How does [the medication] make [you] feel?
26   A: I'm not going to tell you . . . .
27   Q: What have you told [your doctor] about the conditions that you believe were caused by this
     incident?
28   A: Sorry. I think you're invading my – my privilege to have my confidentiality with my doctor[.]

1    memories fade and evidence becomes stale—especially given the events underlying this case

2    reach back more than a decade.  Thus, this factor also highly weighs in favor of dismissal.

3    Ferdik, 963 F.2d at 1260; see also, e.g., Huerta v. Mims, 2013 WL 1222040, at *2 (E.D. Cal. Mar.

4    25, 2013) (finding prejudice to defendants where plaintiff appeared for a deposition, then

5    "terminated the deposition [after plaintiff] admitted that he was on pain medication during the

6    deposition, and that he did not know whether it affected his ability to give accurate testimony[,]

7    became combative . . . , [and] ultimately terminated the deposition because he felt that counsel

8    was manipulating the truth.").

9           Factor Four

10          The court concedes that the public policy favoring disposition on the merits weighs in

11   plaintiff's favor.  This is unavoidable as a basic function of the factor.  However, this factor is

12   outweighed by the other Ferdik factors.  Indeed, it is plaintiff's own failure to prosecute the case

13   and comply with the rules that precludes a resolution on the merits.  See, e.g., Mendia, 2017 WL

14   6210603 at *13 ("While dismissal precludes [] disposition on the merits, such resolution appears

15   unlikely, as Plaintiff's failure to meaningfully engage in discovery . . . shows his intent not to

16   progress toward a merits-based outcome.").

17          Factor Five

18          The court has determined there are no less-drastic alternatives to dismissal.  Rule

19   37(b)(2)(C) does command the court must consider the disobedient party's ability "to pay the

20   reasonable expenses, including attorney's fees, caused by the [discovery] failure."  However,

21   plaintiff is proceeding in this action in forma pauperis, and has limited funds at his disposal.  (See

22   ECF No. 2.)  Thus, an award of attorney's fees and monetary sanctions would be manifestly

23   unjust—not to mention uncollectable.  See, e.g., Woods, 988 F.2d at 127 (noting that an award of

24   attorneys' fees or costs against indigent plaintiff would have been a "hollow gesture.")  Further,

25   the court is convinced that any attempt to coax plaintiff to sit for his deposition, as per Rule

26   37(b)(2)(A)(iv), would be unsuccessful, given that the court has already attempted this method

27   multiple times.  (See, e.g., ECF Nos. 161 ("Plaintiff is warned that a failure to confer with

28   defendants, or a failure to attend the scheduled deposition, will result in serious sanctions under

                                                    13

1    Rule 37(b)(2).”); 163 (“[T]he Court's prior order compelling plaintiff to sit for an oral deposition

2    (ECF No. 161) remains in full effect.”); 171 at 2 ¶ 3 (“Plaintiff is warned that if he fails to

3    participate in a rescheduled deposition, the court will strongly consider a renewed motion by

4    defendants to impose more-severe sanctions—including the dismissal of this case with

5    prejudice.”); 177 (February 2020 warning at the hearing about plaintiff's behavior, and providing

6    him with the opportunity to rethink his recalcitrance).)  Despite these warnings, plaintiff has

7    resumed his delay tactics, and is unlikely to change his behavior.  See Conn. Gen. Life, 482 F.3d

8    at 1096 (terminating sanctions more viable when court has previously tried lesser sanctions and

9    warned a recalcitrant party about the possibility of case-dispositive sanctions).  Finally, the court

10   has considered the remaining relevant provisions of Rule 37(b)(2)(A): suggesting sanctions by

11   (i) directing matters in defendants' answer to be taken as established for purposes of the action,

12   (ii) prohibiting plaintiff from offering evidence in support of his claims, or (iii) striking plaintiff's

13   first amended complaint in whole or in part.  However, if any of these sanctions were put into

14   effect, it would lead to the same result—a loss for plaintiff on his claims—given his broad refusal

15   to participate in questioning.  See Arellano v. Blahnik, 2019 WL 2710527, at *10 (S.D. Cal. June

16   28, 2019) (reasoning that a sanction precluding evidence “would prevent plaintiff from meeting

17   his burden of proof, and have the same effect as dismissal, through a slower process requiring

18   more resources.”).

19            **Conclusion-Ferdik Factors**

20            In sum, plaintiff's outright refusal to participate in his deposition “threaten[s] to interfere

21   with the rightful decision of the case.”  Conn. Gen. Life, 482 F.3d at 1097.  Thus, case-dispositive

22   sanctions under Rule 37 are in order.  Ferdik, 963 F.2d at 1260-1261.  This dismissal is also

23   appropriate under Rule 41(b), as plaintiff's years-long campaign of delay is found to be

24   unreasonable.  Omstead v. Dell, Inc., 594 F.3d 1081, 1084 (9th Cir. 2010) (“A Rule 41(b)

25   dismissal must be supported by a showing of unreasonable delay.”); see also Warne v. City &

26   Cty. of San Francisco, 2018 WL 2215848, at *8 (N.D. Cal. May 15, 2018), aff'd, 797 F. App'x

27   342 (9th Cir. 2020) (reasoning that dismissal sanction for failure to participate in deposition was

28   appropriate under either Rule 37 or 41(b), as the dismissal test is the same under both rules).

1      **B.   Neither plaintiff's opposition nor his ancillary filings alters these recommendations.**

2              Like many of plaintiff's previous filings, his opposition and ancillary filings offer an array

3      of arguments, not only against case-dispositive sanctions but also against requiring him to sit for a

4      deposition.  None of plaintiff's arguments are well taken.

5              Plaintiff states he resisted the January 14 deposition because he was recovering from a

6      November 2020 surgery.  (ECF No. 211.)  However, defense counsel reset the deposition for

7      January 14 because plaintiff asserted his availability after January 12, and plaintiff did not make

8      counsel aware of his continued medical issues until a day before the deposition was to take place.

9      (See ECF No. 213 at Ex. D.)  Further, the court notes that defense counsel had agreed to a large

10     swath of plaintiff's format demands, including that it be conducted by video and that any exhibits

11     could be enlarged for ease of reading.  (Id. at 43.)  Thus, any medical issues impinging on the

12     January 14th deposition lay at plaintiff's feet for failing to inform defense counsel sooner.  See,

13     e.g., Woods, 988 F.2d at 127 (dismissal appropriate, as counsel attempted to accommodate

14     deponent's proposed terms).

15             Plaintiff states he also requires more time to find an attorney (ECF No. 209), to argue his

16     request for a protective order (ECF No. 211), and to re-notice his renewed motions regarding the

17     deposition and attorney withdrawal (ECF No. 212, referencing ECF Nos. 197, 198).  Plaintiff has

18     been acting pro se since 2015, save for a short 4-month period where he was represented by

19     counsel, and has had ample time to retain another attorney after Mr. Wright withdrew.  He has

20     also had since August of 2020 to re-notice his renewed motions for reconsideration (see ECF No.

21     199), and has arguably had since mid-2019 to attempt to limit the scope of the deposition (see

22     ECF No. 149-1 at 3).  Further delay cannot be tolerated.  See, e.g., Societe D'Equipments

23     Internationaux Nigeria, Ltd. v. Dolarian Capital, Inc., 2018 WL 2762016, at *4 (E.D. Cal. June 8,

24     2018) (finding dismissal appropriate where the recalcitrant party had two additional months to

25     retain counsel after withdrawal of former counsel).

26             Plaintiff contends defendants' January 6 notice of the deposition was defective as mailed.[5]

27     _____

[5] The notice of deposition was mailed to the U.S.P.S. location listed as plaintiff's mailing address,
28     but omitted the P.O. Box number.

1   (ECF No. 209.)  However, plaintiff also received an email from counsel on the 10th of January,

2   and responded to counsel before the deposition only to note his objections to the format and his

3   difficulty in reading exhibits.  (ECF No. 213 at Ex. F.)  Further, plaintiff in fact appeared at the

4   deposition on the 14th, and simply refused to answer questions.  See Soroori v. City of Berkeley,

5   133 F.3d 929 (9th Cir. 1997) (rejecting pro se plaintiff's averments that the deposition notice was

6   not properly served where the record demonstrated plaintiff received actual notice before the

7   deposition was to occur); Lehner v. United States, 685 F.2d 1187, 1190-91 (9th Cir. 1982) (noting

8   no due process issues where notice is mailed to the wrong address if the litigant received actual

9   notice); see also E. & J. Gallo Winery v. Gibson, Dunn & Crutcher LLP, 432 F. App'x 657, 659

10  (9th Cir. 2011) (no service issues where deponent had actual notice of the deposition); Baker v.

11  Solano Cty. Jail, 2011 WL 1321954, at *2 (E.D. Cal. Apr. 1, 2011) (when examining prejudice

12  based on alleged mailing to an incorrect address, court found significant that the litigant "never

13  claim[ed] that he didn't receive the notice of his deposition.").  Thus, plaintiff's averment here

14  appears simply a part of his pattern of refusing to participate in the deposition proceedings.  See

15  Henry v. Gill Indus., Inc., 983 F.2d 943, 947 (9th Cir.1993) (repeated cancellations of deposition

16  at the last minute constitute a failure to appear).

17        Plaintiff's remaining arguments for resisting the deposition are frivolous on their face,

18  requiring no analysis.  (See ECF Nos. 209, 211 (asserting that plaintiff November 9 deposition

19  testimony "exposed the . . . defendants' damaging conduct and fraud" and "negates the motion"

20  to depose him); ECF No. 209 (asserting defense counsel has a conflict of interest and cannot

21  question plaintiff in a deposition); Id. (asserting he "is competent as a legal expert on all facts and

22  legal conclusions expressed in the underlying Superior Court case"); ECF No. 211 (asserting that

23  defendants' attempts to depose plaintiff are in bad faith, are harassing, are  "without standing to

24  seek a terminating sanction," and are a part of a corrupt practice).  Plaintiff was advised to cease

25  proffering these kinds of frivolous arguments in December 2019.  (See ECF No. 161.)

26        Thus, the court now resolves plaintiff's ancillary filings alongside defendants' motion, and

27  recommends denial of each.  (ECF No. 210 (plaintiff's objection to the notice of service); (ECF

28  No. 211 (motion for protective order); ECF No. 212 (request for a 60 day extension).

## RECOMMENDATIONS

Accordingly, it is HEREBY RECOMMENDED that:

1.  Plaintiff's motion for a protective order (ECF No. 211) be DENIED;

2.  Plaintiff's motion for extension of time to re-notice the renewed motions for reconsideration (ECF No. 212) be DENIED and the renewed motions (ECF No. 197, 198) be TERMINATED;

3.  The action be DISMISSED WITH PREJUDICE pursuant to Federal Rules of Civil Procedure 37(b)(2) and 41(b); and

4.  The Clerk of Court be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

## ORDER

In light of the above recommendations, IT IS ALSO HEREBY ORDERED that all pleading, discovery, and motion practice in this action are stayed pending resolution of the findings and recommendations.  With the exception of objections to the findings and recommendations and any non-frivolous motions for emergency relief, the court will not entertain or respond to any motions and other filings until the findings and recommendations are resolved.

Dated:  January 28, 2021

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

gonz.2448